# IN THE COURT OF APPEALS OF IOWA

No. 21-0029
Filed March 30, 2022

**ABIGAIL LEE CARTER,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Marshall County, Bethany J. Currie, Judge.

Abigail Carter appeals the district court's denial of her application for postconviction relief seeking resentencing under her chosen name. **AFFIRMED.**

John L. Dirks of Dirks Law Firm, Ames, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee State.

Heard by Bower, C.J., and Tabor and Chicchelly, JJ.

**BOWER, Chief Judge.**

Abigail Carter appeals the district court's dismissal of her application for postconviction relief (PCR) seeking resentencing under her chosen name. Because Carter has not established the use of her legal name is objectively harmful enough to establish a constitutional violation or that the Iowa Department of Corrections (DOC) exhibits deliberate indifference by using her legal name, her claim of cruel and unusual punishment fails, and we affirm the dismissal of her application.

### I. Background Facts & Proceedings

In 2012, Carter pleaded guilty to two counts of third-degree sexual abuse and one count of lascivious acts with a child. *See State v. Carter*, No. 12-1938, 2013 WL 4769414, at *1 (Iowa Ct. App. Sept. 5, 2013). The court imposed consecutive prison sentences for a total term of twenty-five years. *Id.* This court affirmed Carter's conviction on appeal. *Id.* The conviction and sentence are under the legal name Carter was assigned at birth: Phillip Lee Carter.

In 2016, Carter was diagnosed with gender dysphoria at the Iowa Medical and Classification Center. "Gender dysphoria is a diagnostic category in the *Diagnostic and Statistical Manual of Mental Disorders-V* (DSM-V), . . . which 'refers to the distress that may accompany the incongruence between one's experienced or expressed gender and one's assigned gender.'" *Good v. Iowa Dep't of Hum. Servs.*, 924 N.W.2d 853, 856 (Iowa 2019) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 451 (5th ed. 2013)). "The condition is associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning." *Id.* (quoting DSM-V

at § 302.85, at 452–53). Carter identifies as Abigail Carter and uses feminine pronouns. Carter has received therapy and hormone treatments.

Following a court order in a prison-disciplinary case, the DOC made some accommodations, including informal use of Carter's chosen name in daily interactions and providing her with corresponding identification and name tags; but, all written documentation and the DOC computer system still use the name Abigail was sentenced under—her legal name. Due to her incarceration, Carter is not currently eligible to legally change her name to Abigail. *See* Iowa Code § 674.1 (2021).[1]

In October 2018, Carter filed a request in her underlying case to be resentenced using her chosen name. The State resisted, asserting it would circumvent the statutory proscription on name changes by inmates and "[the inmate] should not be afforded special consideration not due any other criminal defendant." The court denied Carter's request, agreeing with the State's reasoning.

In February 2019, Carter filed this PCR application asserting her sentence "was in violation of the Constitution," alleging the continued use of her legal name by the DOC caused emotional distress and requesting as a remedy resentencing

---

[1] Iowa Code section 674.1 provides: "A person who has attained the age of majority and who does not have any civil disabilities may apply to the court to change the person's name." A 1974 attorney general's opinion elaborated on the requirement, stating, "a person who has been convicted of an offense punishable by imprisonment in the penitentiary is under 'civil disabilities'" and "does not have a right to a change of name under [c]hapter 674." 1974 Iowa Op. Att'y Gen. 518, 1974 WL 353763 (1974). Carter does not challenge the statutory limitation or the attorney general's interpretation here. She testified she intends to legally change her name after her release from prison.

under her chosen female name.[2]  The State filed a motion to dismiss and for summary disposition.  Trial was held in November 2020.

At trial, Carter specified her constitutional claim was an assertion of cruel and unusual punishment under the Eighth Amendment to the United States Constitution.  She told the court the DOC's use of her legal name causes emotional distress and that she had never been comfortable with her legal name.  She testified to learning from her therapist and outside organizations about the emotional distress those with gender dysphoria suffer because of continued use of birth names, but she did not present evidence from her therapist or provide any citations for the court to reference beyond her own testimony.  Carter testified about attempting self-castration multiple times because of her gender dysphoria.

The district court denied the State's motion to dismiss and summary disposition, instead addressing the merits of Carter's claim.[3]  The district court concluded Carter "has not provided any support for a claim based upon either gross disproportionality of sentence or deliberate indifference to a serious medical need."  The court determined the use of Carter's legal name on legal documents was not cruel and unusual punishment and no "error or miscarriage of justice occurred at the time of Ms. Carter's sentencing."  The court ruled it could not grant the requested relief and dismissed Carter's application.  Carter appeals.

---

[2] She does not seek a change in sentence, only to change the name she is sentenced under.

[3] The court noted that the PCR application was filed more than five years after the underlying criminal case became final.  However, because the application was filed within three years of Carter's gender dysphoria diagnosis, the court declined to dismiss the case under the limitations period of Iowa Code section 822.3.  The State did not appeal this ruling.

**II. Standard of Review**

"We generally review postconviction proceedings, including summary dismissals of [PCR] applications, for errors at law. When the basis for relief implicates a violation of a constitutional dimension, our review is de novo." *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018) (citation omitted).

**III. Analysis**

Carter asserts the DOC's use of her birth and legal name for all legal purposes constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution.[4]

Carter does not make the gross-disproportionality challenge common to cruel-and-unusual-punishment claims. *See, e.g.*, *Miller v. Alabama*, 567 U.S. 460, 469 (2012). Rather, Carter asserts the DOC's alleged discrimination against her falls within the "deliberate indifference" line of cases—dealing with conduct not purporting to be punishment which violates the Eighth Amendment proscription against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny . . . . After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." (second alteration in original) (citation and internal quotations omitted)).

In response, the State urges the district court's ruling was correct because "Carter has failed to state a cognizable claim under the Eighth Amendment," "the

---

[4] Carter did not assert her claim arose under the state constitution in the district court and limits her argument on appeal to the federal Constitution.

district court could not have granted relief," and Carter "has not met her burden" to establish the continued use of her legal name is cruel and unusual punishment.[5]

Carter concedes sentencing under her legal name was not part of her punishment according to law. However, the Eighth Amendment prohibition of cruel and unusual punishment can be applied to some deprivations "not specifically part of the sentence but . . . suffered during imprisonment." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

A claimant alleging a deprivation injury under the Eighth Amendment must establish two elements: "the deprivation alleged must be, objectively, 'sufficiently serious,'" and the relevant "official must have a 'sufficiently culpable state of mind'" that results in "the unnecessary and wanton infliction of pain." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). The first element "is contextual and responsive to 'contemporary standards of decency,'" but a conditions-of-confinement claim must show extreme deprivation because routine discomfort is part of the inmate's penalty. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992) (citation omitted). The "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (citation omitted).

"If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting

---

[5] The State also asserts any argument from Carter based on discrimination, equal protection, or public accommodation is not preserved because she did not raise them below. Carter concedes these civil rights claims were not raised or litigated below, limiting the applicability of *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), and *Good*, 924 N.W.2d 853. As these civil rights claims are not preserved, we will not address them on appeal.

officer before it can qualify." *Wilson*, 501 U.S. at 300. "In prison-conditions cases [the required] state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (citation omitted). The term "deliberate indifference entails something more than mere negligence" but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. The Supreme Court held,

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference.

*Id.* at 837. "[A]n official's failure to alleviate a significant risk that [they] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley*, 475 U.S. at 319. "The general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should also be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Id.* at 320.

Based on this case law, Carter bears the burden of establishing the DOC's use of her legal name deprives her of "the minimal civilized measure of life's necessities" and that it has been done with a culpable mind. *See Farmer*, 511 U.S. at 834. The district court held Carter failed to provide evidence, expert testimony,

or research to establish continued use of her legal name was cruel and unusual punishment. Given the dearth of specific facts or evidence in the record, we agree.

Carter testified generally at trial about her distress, but it is difficult to discern if the distress is particular to the DOC's use of her legal name in its records or is more generally an effect from gender dysphoria. She testified to information from her therapist and by "a world organization" on transgender and dysphoria, but she did not provide or cite specific resources, articles, or other evidence to support her claim. Carter is in therapy and could have offered—but did not—her therapist's expert testimony about the effect of the use of Carter's legal name on her mental and emotional state, which may have provided a more objective view of whether the use of Carter's legal name use rose to the level of cruel and unusual punishment. We simply do not have sufficient information to find the DOC's use of her legal name resulted in depriving Carter of the "minimal civilized measure of life's necessities." *See Farmer*, 511 U.S. at 834 (citation omitted).

Even if we found the emotional distress caused by use of her legal name was sufficiently serious to support the first prong of a cruel-and-unusual-punishment claim, Carter's claim would still fail on the second prong. Carter did not provide any evidence of wanton or obdurate actions or behavior from any DOC official tantamount to deliberate indifference. *See id.* at 843–44. Neither side offered DOC guidelines on how it generally addresses name changes or its treatment of transgender persons or if DOC officials were following such guidelines, or even if they exist.[6] Carter does not allege the DOC is using her legal

---

[6] It is unclear from this record whether the DOC has established *any* procedures relating to gender dysphoria and gender transitioning.

name with the purpose of causing her pain.  The record does not include the order resulting in the informal use and identification change to Abigail Carter or any examples of prison officials flouting the order.  In short, the record does not support a finding of a culpable mind in the use of Carter's legal name in official records.

Carter has not established a sufficient evidentiary record to support her claim that the harm caused by the DOC's use of her legal name rises to the level of an Eighth Amendment violation.  Neither has she presented any evidence to show the required subjective culpability by the DOC.  We affirm the district court's dismissal of Carter's application for postconviction relief.

**AFFIRMED.**